

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

August 20, 1990

Ms. Helen Campbell
Commissioner
Office of Firemen's
  Pension Commissioner
3910 South IH 35, Suite 235
Austin, Texas 78704

Opinion No.   JM-1210

Re:  Authority of the City of
Austin Fire Fighter's  Relief
and Retirement Fund to  enter
into   "securities    lending
agreements" with a   corporate
borrower   (RQ-1847)

Dear Ms. Campbell:

     On behalf of  the City of  Austin Fire Fighters  Relief
and Retirement Fund you  pose questions about the  authority
of the   trustees  of   the fund   to   enter   into   "securities
lending agreements."   You advise:

> Securities lending contracts are usually made
> between a   corporate   securities  dealer,   as
> 'borrower,'   and   a   pension   fund   or   other
> investor, as 'lender,' and involve securities
> already  owned  by  the  lender.   Under   the
> lending  agreement,   the  lender  agrees   to
> deliver and  transfer the  securities to  the
> borrower (so as to register the securities in
> the borrower's   name as   owner), and   at   the
> same time the borrower delivers to the lender
> collateral securities  of  equal  or  greater
> value than the  borrowed securities.   During
> the period  of the  'loan,' these  agreements
> provide that, as between the borrower and the
> lender, the lender remains  the owner of  the
> 'borrowed  securities'   (and   the   borrower
> remains 'owner'  of the  'collateral'  secur-
> ities) with  the lender  entitled to  receive
> (from the borrower) the amount of  dividends,
> interest, or  earnings  attributable  to  the
> 'borrowed' securities,  and the  borrower  is
> entitled  to   receive  from   the  lender   the
> dividends or  earnings  attributable  to  the
> 'collateral'  securities.   However,  it   is
> expressly provided in the agreement that  the
> borrower is to be  invested with the  indicia

> of complete title to the borrowed securities, and has the right to sell or transfer the borrowed securities to others, so as to have, as to all third parties, ownership of the securities. At the conclusion of the period of the lending agreement, the borrower is required to 'return' the borrowed securities, or more precisely, to deliver to the lender the same amount and type of securities borrowed, but not necessarily the same certificates; and the lender is required to redeliver to the borrower the 'collateral' securities.

Briefs received in support of the power of the fund to enter such agreements characterize them as similar to "repurchase agreements." The only difference, it is said, between a securities lending agreement and such a purchase/sale agreement is that in a securities lending agreement, title to the securities does not pass to the borrower and title to the collateral securities does not pass to the board.

Such transactions do not involve investments by the lender in the securities loaned or in the collateral received; rather, they constitute investments in the contractual obligations of the borrower (to deal with the loaned property in a particular way). <u>See</u> Attorney General Opinion JM-1201 (1990); JM-23 (1983).

Your first question reads:

> Are the trustees of the Fund authorized under subsection (g) of Section 10, or other law to enter into "securities lending agreements" with a corporate borrower? [of article 6243e.1, V.T.C.S.]

Section 10, subsection (g), provides:

> (g) When, in the opinion of the board of trustees, there is on hand in the fire fighter's relief and retirement fund of any city under this Act a surplus over and above a reasonable and safe amount to take care of the current demands on the fund, the surplus, or so much of it as in the judgment of the board is deemed safe, may be invested in:

(1)  United States Treasury notes,  bonds, and bills;

(2)  United States government agency obligations;

(3)  corporate bonds rated  'A' or  better by Moody's  or  Standard  and  Poor's  bond ratings;

(4)  preferred corporate stocks;

(5)  commercial paper rated 'P2' or better by Standard and Poor's and 'A2' or better  by Moody's bond ratings;

(6)  state, county, or municipal bonds;

(7)  shares or share  accounts of  savings and loan associations, if the shares or share accounts are insured  by the Federal  Savings and Loan Insurance Corporation;

(8)  shares or share accounts of banks,  if the shares or share  accounts are insured  by the Federal Deposit Insurance Corporation;

(9)  short-term investment  funds,  mutual funds, or their equivalent, which may include investments in bank certificates of deposit;

(10)  notes and  other  evidence  of  debt secured by mortgages insured or guaranteed by the Federal Housing Administration under  the National Housing Act (12 U.S.C. Section  1701 et seq.);

(11)  common stocks of companies  incorporated within the United States that have paid cash dividends for at least five  consecutive years immediately  before  the date  of  purchase, are rated  'B' or  better by  Standard and Poor's  bond ratings  or are  equivalent, and are listed on an exchange registered with the Securities and Exchange Commission; and

(12)  common stocks  of  foreign corporations that  are designated  in United  States dollars  and  are  registered  with  the Securities and Exchange Commission.

The legislature did not include "securities lending agreements" among the transactions the statute would sanction. See Attorney General Opinion MW-506 (1982) (firemen's relief fund may not be invested in local partnership under statute). See generally Tex. Const. art. XVI, § 67(a)(1), (a)(3) (investment policy for retirement systems and related programs).

In response to your first question, we advise that the trustees of the fund are not authorized by subsection (g) of section 10 of article 6243e.1, V.T.C.S., or any other law, to enter into "securities lending agreements" with a corporate borrower. In view of this answer, we do not reach your other questions.

### S U M M A R Y

The trustees of the City of Austin Fire Fighters Relief and Retirement Fund are not authorized to enter into "securities lending agreements" with a corporate borrower.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General